Baldwin, J.
By means of the appointment of a receiver, a Court of Equity takes possession of the property which is the subject of the suit, preserves it from waste or destruction, secures and collects the proceeds or profits, and ultimately disposes of them according to the rights and priorities of those entitled, whether regular parties in the cause, or only parties in interest coming before the Court in a seasonable time, and due course of proceeding, to assert and establish their pretensions.
The receiver appointed is the officer and representative of the Court, subject to its orders, accountable in such manner and to such persons as the Court may direct, and having in his character of receiver no personal interest, but that arising out of his responsibility for the correct and faithful discharge of his duties. It is of no consequence to him how, or when, or to whom, the Court may dispose of the funds in his hands, provided the order or decree of the Court furnishes to him a sufficient protection.
The order of appointment is in the nature, not of an attachment, but a sequestration: it gives in itself no advantage to the party applying for it over other claimants ; and operates prospectively upon rents and profits which may come to the hands of the receiver, as a lien in favour of those interested, according to their rights and priorities in or to the principal subject out of which those rents and profits issue.
In the exercise of this summary jurisdiction, a Court of Equity reverses, in a great measure, its ordinary course of administering justice; beginning at the end, and levying upon the property a kind of equitable execution, by which it makes a general, instead of a specific appropriation of the issues and profits, and after- *209 wards determining who is entitled to the benefit of its quasi process. But acting, as it often must of necessity, before the merits of the cause have been fully developed, and not uufrequently when the proper parties in interest are not all before the Court, it proceeds with much caution and circumspection, in order to avoid disturbing unnecessarily or injuriously legal rights and equitable priorities.
Amongst incumbrancers, a mortgagee with the legal title has of course the legal advantage. In truth, he is at law, for the purposes of his incumbrance, the owner of the estate; and after forfeiture, his title, as between him and the mortgagor, becomes absolute and indefeasible ; and even before forfeiture, unless otherwise stipulated, he is entitled to the possession, may enter and eject the mortgagor, who is but his tenant at will, or, if the land be in lease, give notice to the tenants to pay him the rent, and distrain for it if they refuse. Equity, it is true, preserves to the mortgagor, and those claiming under him, the right of redemption; and treating the mortgagee, for its own purposes, as a trustee, makes him accountable, when in possession, for the rents and profits, by way of set off against the mortgage debt. But equity will not, unless in a very strong case, disturb his possession, by the appointment of a receiver, on the application of a subsequent mortgagee or other equitable incumbrancer; and never, if the validity of his mortgage be unimpeached, and he swears there is any thing due to him. On the other hand, because of the remedies which the mortgagee of the legal estate has in his own hands, equity will never appoint a receiver on his application.
Equity, on the question of appointing a receiver, not only respects the actual possession of the first mortgagee, but is cautious not to interfere with his right to take or obtain the possession, if he should desire it. It was at one time held that the Court would not appoint a re *210 ceiver, without his actual consent, though out of possession, and at another, not unless he had been brought before the Court as a party in the cause. But these decisions are now properly disregarded, inasmuch as the mortgagee (being content with his security) may not desire the possession, and be unwilling by taking it to subject himself to an account; and moreover there are cases in which the other parties, not questioning his priority, but claiming only in subordination to his rights, he may not be regarded as a necessary party: For example, a second mortgagee may file a bill of foreclosure against the mortgagor and a third mortgagee, without making the first mortgagee a party. Besides, a first mortgagee, to whom the possession may be unimportant, might collude with the mortgagor, to enable the latter to enjoy the profits, to the prejudice of subsequent incumbrancers having a right to stand in his shoes. The rule, therefore, now seems to be, if a case be otherwise proper for a receiver, to appoint one, if the first mortgagee be not in possession, upon the presumption, (I suppose,) for the occasion, that he has no sufficient cause to desire it.
The order for the appointment of a receiver is, in the English practice, always special, more or less so as the circumstances of the case, as then developed, may seem, in the discretion of the Court, to require. If the receiver is appointed on behalf of an incumbrancer, the order generally, after directing the appointment by a master, and prescribing his duties, contains a direction that the appointment of a receiver is not to affect the prior incumbrancers, who may think proper to take possession of the estates and premises, by virtue of their securities respectively; and it usually directs the master to enquire what incumbrances there are affecting the estate, and into the priorities thereof respectively; and orders that the person to be appointed receiver do,. out of the rents and profits to be received by him, keep down the inte *211 rest and payments in respect of such incumbrances, according to their priorities, and do also pay the balance, &c. into the bank, &c. Seaton on Decrees 322-3; 3 Daniel’s Ch. Prac. 1978.
Under such an order, the reservation to prior incumbrancers of the right to take possession, is not intended to authorize them to disturb the possession of the receiver, but to designate the future exercise in their behalf of the authority of the Court. It does not warrant a mortgagee of the legal estate to enter upon it, and oust the receiver, or collect the rents, or bring an action of ejectment to recover the possession. By the order of appointment, the Court takes the whole subject into its own hands ; and, ultimately, disposes of all questions, whether legal or equitable, growing out of the proceeding. The possession of the receiver is that of the Court, and any attempt to disturb it, without leave first specially granted, will be a contempt, and may be punished as such. The usual course is for the incumbrancer claiming the possession, or, what is equivalent, the rents and profits accruing under the order of appointment, to apply to the Court for leave to be examined before the master pro inter esse suo, and upon the master’s report and the accompanying evidence, the question is decided by the Court: or, in its discretion, the Court sometimes gives the claimant leave to bring an action of ejectment, to try a pure matter of legal title, with such directions, however, as will still guard the possession.
The reservation of prior rights in the order of appointment, by force of which leave may be obtained to be examined pro interesse suo, or to bring an ejectment, is intended only for the protection of strangers to the suit, or at least does not embrace parties in the cause whose conflicting claims to priority are the subject matter of the suit. In regard to the latter, such proceedings would be inappropriate and inadmissible : they are borrowed from the sequestration for non-appearance, or for non-per *212 formance of a decree, in which the rights of third persons might otherwise be sacrificed, they having no opportunity of being heard as regular parties. When a controverSy between conflicting claimants is the very burthen lhe su^j A can only be determined at the hearing, upon the pleadings and proofs in the cause.
In regard to a controversy litigated as last mentioned, it is clear that the parties cannot be prejudiced, in respect of the rents and profits, by any neglect in the prosecution or defence of the suit, which Avould not impair their rights to the principal subject out of which those rents and profits issue. During such controversy, the rents are accruing in the custody of the Court, ready to be paid over to the party ultimately prevailing. In truth, from the time of the order of appointment, both parties are in possession by the hand of the receiver, and when the question of right is ultimately decided, the possession of the party prevailing becomes exclusive throughout the whole period, by relation to the date of the order. This is clear both upon principle and authority. See 2 Story’s Equ. 134; Wyatt’s Prac. Reg. 356; Sharpe v. Curtis, 3 P. W. 375; Boehm v. Wood, 11 Cond. Eng. Ch. R. 181; Walker v. Bell, 2 Madd. R. 21. In such a case, there can be no race of diligence for the exclusive appropriation of the rents.
It is true that a mortgagee’s right to receive the profits is an incident of his possession; and if he permits the mortgagor, or subsequent incumbrancers, to retain the possession and enjoy the profits, he cannot recover them by action at law or suit in equity. But the appointment of a receiver is in the nature of an injunction, which defeats the mortgagee’s power of election : he cannot take possession if he would: the Court takes and preserves it for him, until his right of priority is established. This is equally true, whether his right be impeached in an adverse suit brought against him, or not being a party, he obtains leave to be examined pro inte *213 resse suo. But the two casos are plainly distinguished in this, that in the former he has nothing to do but wait the decision of the controversy, and receive the rents from the hands of the Court; but in the latter he must come forward in a seasonable time, for if he holds back and suffers the fund to be paid over to the mortgagor, or subsequent incumbrancers, he will then be too late.
In regard to questions of priority amongst incumbrances, deeds of trust to secure the payment of money, stand upon the same footing as mortgages. It may be doubted whether a deed of trust, which only authorizes a sale upon nonpayment, and contains no clause of entry and distress, would enable the incumbrancer, through his trustee, to hold the possession, for the purpose of taking the rents and profits; but that is immaterial upon the effect of the order appointing a receiver. Such an incumbrancer has the more prompt and effectual remedy of foreclosure by a sale in pais, through the agency of the trustee. If he should purchase in the property himself, he thereby obtains the possession : if purchased by a stranger, then he gets his money, and makes interest instead of profits. Now, of this remedy, he is deprived by the appointment of a receiver.
In the cases before us, the controversy between the parties as to the principal subject was determined by the decree of this Court upon the former appeal: and the present appeal presents the incidental question of priority in regard to rents which issued from the principal subject, pending that controversy, and after the appointment of a receiver. To the clear apprehension of the question, we must advert to the origin, nature and progress of the whole controversy. But, to avoid prolixity, I must refer, first, to the reported statement in 2 Leigh 426; and, next, to that which will be made by the present reporter; recurring, in the course of my remarks, from time to time, to leading facts, as the occasion may seem to require.
*214 It will be seen that the deed to Mason conveyed certain land, to secure a debt to Peter R. Beverley, and that the subsequent deeds to Scott (of which only one is important) embraced the same land conveyed to Mason, and other lands, &c. upon trusts for the indemnity and security of Scott and others, in prescribed classes, the last of which extended to the grantor’s creditors generally. Weaver, claiming to be a creditor of the grantor Pickett, by his original bill, filed in May 1821, against Pickett and Scott, sought to have the trusts of the deed to Scott executed; to have an account taken of the debts of Pickett; and to obtain satisfaction of his debt, which belonged to the fourth class. By his amended bill, filed in May 1822, he made Mason and Peter R. Beverley defendants, impeached the deed to Mason as void, because usurious and not duly recorded, and prayed relief against it. Robert Beverley, by his bill, filed in June 1823, against Pickett, Scott, Mason and Peter R. Beverley, claiming as assignee of the latter, the debt secured by the deed to Mason, asserted the priority of that incumbrance, charged that Scott and Pickett were endeavouring to defeat it, and, by withholding the possession of the land which it covered, obstructing the trustee Mason in the performance of his duties; and prayed the possession and sale of the land, and the application of its proceeds to the payment of the plaintiff’s demand.
In this state of things, the order in Weaver’s suit, of September 1823, was made, on the plaintiff’s motion, appointing Judge Scott receiver, and embracing all the property conveyed by the deed to Scott, including the land conveyed by the deed to Mason. The order enured, as I conceive, to the benefit of all the parties to the controversy, though it was, not improperly, made in Weaver’s suit alone, an application for a receiver coming regularly only from a party plaintiff, and it being sought on the part of those entitled under the deed to *215 Scott. It was made, so far as regarded the land conveyed to Mason, with a view to the question of priority between the incumbrance created by the deed to Mason, and that created by the deed to Scott, and for the better security of the parties to that controversy during its continuance. That controversy involved not only the question of better right, but also of immediate enjoyment. The effect of the order was to tie the hands of Beverley, so as to prevent him from foreclosing his incumbrance, by a sale through the agency of his trustee, under the provisions of his trust deed. Beverley has prevailed in the controversy by establishing his priority in relation to the principal subject; and the principles of equity seem to require that he should equally prevail in relation to the rents that accrued from it while in the hands of the receiver.
Weaver’s suit was matured for hearing, and the amended bill having been taken for confessed against Mason and Peter R. Beverley, upon a decree nisi against the former, and an order of publication against the latter, was heard in May 1824, in regard to them, as well as the other defendants, and a decree rendered, by which the Court, “ not deciding upon the validity of the deed to Mason, or the consideration of the note to Peter R. Beverley, thereby secured,” and confirming the commissioner’s report of debts and priorities made under the order of account, directed the defendant Scoil to sell the land and other property conveyed by the deeds to him, except so much as was embraced by the deed to Mason ; and after defraying the expenses of the sale and the costs of the suit, to apply the proceeds to the benefit of himself and others, as specified in the decree, for the purposes provided for by the deeds to him, to wit, the payment of debts and liabilities according to their priorities : with a reservation of leave to the parties, and all others concerned, of liberty to apply to the Court at a future day, for the disposition of a sum directed to be *216 retained on account of a debt claimed on the part of English, and also for a decree for a sale of the land conveyed by the deed to Mason.
un(jer this decree, Judge Scott, in October 1824, made ^is rePort sales and application of the proceeds, shewing a large deficiency of the fund to meet the debts reported, there being only enough to discharge those of ^ ^rst> an<^ a small proportion of those of the second class, and leaving nothing for those of the third and fourth classes: and a decree was then made in conformity with his report, with a direction to Scott to retain in his hands a part only of the sum before reserved on account of the debt claimed by English, and leave to the parties to apply to the Court at a future day for its disposition; but without any further reservation in regard to the land conveyed to Mason, in respect to which the decree was silent. And nothing further has been since done in Weaver’s suit.
Though the ultimate decree in Weaver’s suit thus deferred or waived, deciding the question of priority between the two incumbrances, the controversy on that subject was still continued in Beverley’s suit, with which the case of Brooke’s adm’r, &c. v. Pickett, &c., thereafter instituted, became connected. ■ In the latter suit, the bill filed by Brooke and Steptoe Pickett in January 1825, against George Pickett, Mason, Peter R. Beverley, Robert Beverley, Laird and English, impeached and sought to vacate the deed to Mason as usurious, and unduly recorded, and asserted the lien of English’s prior judgment, to which, as sureties for its payment, they sought to be subrogated, against the land conveyed to Mason; and asserted also a title in Brooke, by purchase of the same laud at the sheriff’s sale thereof, by force of the grantor Pickett’s surrender on taking the insolvent’s oath, at the suit of Letty Ball, a creditor by judgment recovered after the deeds to Mason and Scott; and asserted moreover a lien upon the same laud by a *217 judgment recovered after the grantor’s discharge as an insolvent, by Laird, and by him assigned to Brooke. And Beverley, by an amended bill in his suit, filed in July 1826, against Brooke, Steptoe Pickett, Laird and Scott, sought to repel and overrule the pretensions of Brooke and Steptoe Pickett.
These two cases of Beverley v. Pickett, &c. and Brooke’s adm’r, &c. v. Pickett, (pc. were heard together, and a joint decree rendered therein ; and this Court, upon the former appeal, reversed that decree, and postponed the incumbrance of the deed to Scott to the incumbrance of the deed to Mason, and both to the lieu of English’s prior judgment, which it charged ratably on the lands conveyed by those deeds; directing the land conveyed by the deed to Mason to be sold, and the proceeds applied in conformity with the principles of its decision ; and it repudiated the pretensions of Brooke and Steptoe Pickett, in relation to the priorities claimed over Beverley’s incumbrance, for the judgments of Betty Ball and Laird.
In conformity with the decree of this Court, the land conveyed by the deed to Mason, was sold, and the proceeds appropriated, in the first place, to the discharge of so much of English’s judgment, (which Judge Scott had acquired by assignment,) as this Court held it to be liable for; and, in the next place, towards the payment of Beverley’s incumbrance ; and there being a large balance still due upon the latter, we are now to decide whether, with a view to its extinguishment pro tanto, Beverley is entitled to an account of the rents which accrued from the principal subject, under the order made in Weaver’s suit, appointing Judge Scott the receiver.
In considering this question, we must bear in mind, that, at least from the date of the order of account in Weaver’s suit, (which preceded the appointment of the receiver,) the creditors who have availed themselves of that order, must be treated as plaintiffs in that suit. *218 The order directed a commissioner to take an account of the debts due from Pickett, according to the priorities prescribed in his deed to Scott, and liberty was reserved ^ jjjs cre¿itors not already parties to the suit, who shoui¿ come in and contribute to the expenses of prosecuting it, to appear before the commissioner for the purpose of establishing their several demands. Those who took the benefit of the account, or otherwise of the suit, must be regarded as the substantial plaintiffs in the cause, aud had a right to conduct it to its conclusion in the name of Weaver. The motion for a receiver must be treated as their motion, the omission to make Robert Beverley a defendant as their omission, and the consequent waiver of a decision in that suit, upon the question of priority between the conflicting incumbrances, as their waiver.
We should also reflect, that the whole difficulty on this subject of rents, has arisen out of this failure of those beneficiaries in the deed to Scott, to make Robert Beverley a defendant in Weaver’s suit. If that had been done, the decision in that suit, of the question of priority between the two incumbrances could not have been declined, or there must have been a formal adjournment of it, with its incidents, into Beverley’s suit, or (which would have been more congruous, and safer from error,) the ultimate hearing of Weaver’s suit must have been deferred, until Beverley’s was matured, and then the two causes, and the case of Brooke’s adm’r, &c. v. Pickett, &c. heard together, under an order for that purpose, according to the strict English practice, or without such an order, according to the less formal practice that has usually prevailed in Virginia. And the result, as a matter of course, must have been that Beverley would either have gotten, without delay, the benefit of his incumbrance, or, while delayed, the rents must unquestionably have accumulated in the receiver’s hands to his advantage, inasmuch as his right to the *219 possession, or the rents, could not but follow immediately and inevitably an adjudication in his favour of his bettor right in regard to the principal subject.
The question, then, is reduced to this: have the substantial plaintiffs in Weaver’s suit so conducted that cause as to gain an advantage over Beverley in regard to the rents ? This, I think, it was not in their power to accomplish. The waiver of a decision, in that suit, upon the question of priority between the two incumbrances, was not a waiver of the controversy on that subject. It was not competent for one party only to the controversy to waive it, though it might have been renounced by yielding to the pretensions of the adverse party. If such a renunciation had been contemplated by those prosecuting Weaver’s suit, the course would have been to obtain an order of the Court dismissing the plaintiff’s bill in relation to that subject, discharging the receiver, and directing him to surrender the possession of the land to Beverley’s trustee, that he might proceed to execute his trust. Nothing of the sort was done or contemplated. On the contrary, the claimants under the deed to Scott, held on to their pretensions; the receiver held on to his possession; and Beverley was kept off from a foreclosure until he could effect it in his own suit; which was at the same time vigorously defended.
It seems to me, clear, that after the appointment of the receiver, neither party could acquire the rents, without obtaining a decision of the controversy against the adverse party. It was not competent for either, pending the controversy, by any course of proceeding, to gain an exclusive possession. The claimants under the deed to Scott, could not, by any act or omission of theirs, shift the possession from the hands of the receiver into those of their trustee, and the receiver himself could not divest himself of it in that character, and hold it either as trustee or trespasser. If such a course were permitted, *220 then the effect of the appointment of receiver would be to give the accruing rents, not to the successful, but the unsuccessful party in the very controversy, with a view to which the appointment is made.
The omission in Weaver’s suit to decide the controversy, was not, it seems to me, a silent discharge of the receiver; but it would have been a good answer to a motion, if it had been made, for an order discharging him; and such an order would, I think, have been unexampled during the continuance of the same controversy, whether in the same suit, or in another pending in the same Court, between substantially the same parties. We are told, it is true, in the English books of practice, that the appointment of a receiver made previous to a decree, will be superseded by it, unless the receiver is expressly continued; and for this we are referred, without any statement of the decision, or of the circumstances of the case, to Gibson v. Lord Montfort, which is unreported. The general proposition is, however, doubtless, correct, and the reason of it quite obvious: the decree almost invariably settles the controversy, disposes of the subject, and gives the possession to the party entitled; after which, there is nothing for the receiver to act upon; and if he were to intermeddle with the possession, or the right to it, conferred by -the decree, he would do so without authority. But I presume no authority can be found for the proposition, that the appointment is superseded by a decree which does not decide the controversy, and leaves the possession of the receiver undisturbed. Indeed, the same books tell us, and in the same connection, that a receiver is never discharged by decree, but the application for his discharge is usually made on motion, notice whereof should be served on all parties. 3 Daniel’s Ch. Pract. 2003.
I do not perceive what colour of defence, in relation to the rents, the claimants under the junior incumbrance could have had, but for their failure to make Ro *221 bert Beverley a defendant in Weaver’s suit; and at best, the grounds they occupy seern to me to be merely formal. It is urged that the appointment of the receiver could not enure to Robert Beverley’s benefit, because, though he was a party to the controversy, he was not a party in the cause. And why is it not enough that he was a party to the controversy? Robert Beverley had no interest separate and distinct from that of Peter R. Beverley: they had a common interest in the same controversy, Peter as the assignor for value, and Robert as the assignee of the debt and security impeached. If the deed to Mason should be established, it was a matter of no importance to the cestuis que trust in the deed to Scott, whether the debt secured by the former were paid into the hands of Peter or Robert Beverley, between whom there was no contest. If paid into the hands of Peter, it would be held by him for the use of Robert, in like manner as any other debt sued for, recovered and collected, in the name of an assignor, without any notice of the assignment taken on the record.
Let us suppose that the question of priority between the two incumbrances had been decided in Weaver’s suit, and in favour of Peter R. Beverley; and the Court so deciding had directed the rents in the hands of the receiver to be paid to him : could the junior incumbrancers ever have recovered them from him, or from Robert Beverley, if paid over to him by Peter ? Certainly not. On the other hand, the hypothesis of a decision of that question against Peter R. Beverley, not binding on Robert, would be idle, against the fact that it has been ultimately decided in favour of both Peter and Robert.
In my view of the subject, it is of no consequence whether the ultimare decree in Weaver’s suit is to be considered final or interlocutory, and I shall express no opinion upon it. In neither aspect can it operate as a bar to relief in these suits, as to any matter which it *222 left unadjudicated. It did not adjudicate the question of priority between the two incumbrances, as to the principal subject, and presented no obstacle to the relief in regard to it already given in the present suits. Nor it adjudicate the incidental question of priority in relation to the rents, which was consequential only upon that which it declined to adjudicate. It is true that one Year’s rent thereafter to accrue of the whole land, including that conveyed by the deed to Mason, was applied to the benefit of the creditors claiming under the deed to Scott. It had been embraced, without any previous authority from the Court, in the report of the sales of the land and other property not conveyed by the deed to Mason, which report was not excepted to, and the subsequent decree of the Court was in conformity with it. The error cannot be corrected in the present suits; but we cannot infer from it collaterally an abstract adjudication as to the other rents which should thereafter accrue, and to issue exclusively from the laud conveyed to Mason. There is no colour for saying, nor is it pretended, that the Court held them to be properly applicable to the purposes of the deed to Scott, or that the receiver should keep them without accountability.
I think it clear that Robert Beverley cannot be treated like a stranger to the controversy, whose claim has not been litigated by the pleadings, and who comes in by petition or motion, to remove a sequestration, or be let into possession, or for leave to be examined fro inter esse suo, or to bring an ejectment. It has already been suggested that the rules of proceeding in such cases are not applicable, where the question of priority was a subject matter of controversy in the cause wherein the receiver was,appointed. The authorities relied on for the appellees have relation to cases of the former character, and not of the latter, as will be seen by a brief notice of them, which will also serve to shew that if they were applicable to, they could not prejudice, the pretensions of the appellant.
*223 In Gresley v. Adderley, 1 Swanst. R. 573, a mortgagee of a term, after the term had expired, and whose suit to subject it had been dismissed for that reason, moved in another cause in which he was not a party, and in which a receiver had been appointed, and a reference by decree made to a master to allow maintenance to the plaintiff, and ascertain charges and incumbrances, (the mortgagee having taken no previous measures to obtain possession of the estate, or the receipt of the rents and profits, by virtue of the term, or to establish a charge under the decree,) and his motion was for leave to go in before the master and make proof of what was due him, and that the master might take an account of the rents and profits of the premises comprised in the term, which had come to the hands of the receiver, from the time of his appointment to the expiration of the term, or which accrued during that period: which motion was overruled. No comment upon the case seems at all requisite.
In Davis v. The Duke of Marlborough, 1 Swanst. R. 74; 3 Swanst. R. 113, the plaintiff was an annuitant secured by a conveyance to a trustee, with power to enter, take the profits and sell: and a receiver was appointed, with a reference to a master, and the usual directions given to ascertain incumbrances and priorities, &c. &c., and afterwards the amount duo the plaintiff being tendered and accepted, a motion was made to discharge the receiver, which was resisted by several defendants, with whom there had been no controversy, but who insisted that they had annuities prior to the plaintiff’s, and were therefore more interested than the plaintiff in the appointment of a receiver; that they had also the legal estate, of the advantage of which they had been deprived by the order for the receiver, and as a substitute, they were entitled to the benefit of the order. But the objection was overruled, and the receiver discharged ; the Ld. Chancellor [Eldon) saying that he apprehended, with the right of the plaintiff to have a *224 receiver, must fall the rights of the other parties: that it would be most extraordinary if, because a receiver has been appointed on the part of the plaintiff, any defen- ^ en¡.jj.]e¿¡ ¡-G ¡iave a receiver appointed on his behaif. an¿ t^at the defendants might file a bill, but the appointment of a receiver would not have affected their legal estate.
Upon that case, it is to be observed, 1st. That a claim to priority was no object of the suit, nor at all litigated between the parties; 2dly. That the plaintiff was actually satisfied, and not further prosecuting his demand: 3dly. That if his lordship meant the appointment of the receiver had been no obstacle to the defendant’s taking possession, and enjoying the rents and profits, he was in conflict with the current of authorities, and his own opinion expressed in other cases; 4thly. That the principle of the decision seems rather harsh and narrow, and has been disregarded by other Judges.
Thus, in Largan v. Bowen, 1 Sch. & Lef. 296, Ld. Chancellor Redesdale took a more liberal view of the matter, in a similar case. There, a bill was filed against the devisees of an estate, to have satisfaction of a legacy charged upon it by the will, and that such creditors and legatees as should come in under the decree, should be paid out of the estate. A person who had a charge upon the estate in the lifetime of the testator, and against whom the testator had filed a bill impeaching his demand, was made a defendant, in the progress of the suit, and a receiver was appointed. The devisees afterwards came to an agreement with the plaintiff, and the other parties, except the claimant of the charge mentioned, and moved to discharge the receiver. The Lord Chancellor thought that it would be highly improper to permit the claimant to be thus turned out of Court, refused to discharge the receiver, and referred the claim to a master, laying the claimant under terms to let the suit brought by the testator, and which abated by his death, *225 be considered as if fully revived: and he intimated that he would have done the same, even if the claimant had not been made a party; and threw out the general idea, that creditors, depending on the faith of such proceedings, ought not to be disappointed, and though it might be that they would, in such a case, be required to file a bill of their own, yet that it would be considered as filed at the institution of the suit in which the order of appointment was made, and without discharging the receiver.
In White v. Westmeath, 2 Molloy 128, (and to be found in 12 Cond. Eng. Ch. R. 378,) it is true, Sir Anthony Hart, the then Lord Chancellor of Ireland, distinguishing the case from that of Largan v. Bowen, and admitting the justice of Lord Redesdale’s principle of preventing the fund from going out into the hands of the devisees, yet criticised much the order of his predecessor : but his criticism consisted of formal objections to treating the testator’s abated suit as if actually revived.
And in Murrough v. French, 2 Molloy 497, (to be found in 12 Cond. Eng. Ch. R. 580,) Sir William M’Mahon, the then Irish Master of the Rolls, approved of Lord Redesdale’s principle. The case is thus briefly stated by the reporter: “ Motion before decree to remove a receiver, got on process by a younger child, upon a bill filed by him to raise his portion. This plaintiff consented, and $hc parties in the other cause also consented, and it appeared the estate was lately vested by defendant, by deed, in a trustee, to pay all the creditors on it. A jointress party to the suit opposed the motion.” The Master of the Rolls held, that “ if there are prior creditors in a cause having claims on the estate, and the Court, by appointing a receiver, interferes with then-rights, though the plaintiff may dismiss his bill, yet the Court will protect the rights of such creditors, parties in the cause, by continuing the receiver, putting the per *226 sons so protected, under terms to file a bill forthwith.” Of course, no such terms would have been required from a creditor who had already filed his bill asserting his de- , mana.
Bainbridge v. Blair, 3 Beav. 422, (stated 3 Daniel’s Ch. Pract. 2003,) the same principle of protection was carried out, though the receiver was discharged. There, a receiver had been appointed in a suit for the removal of trustees, and the appointment of new ones, and upon new trustees being appointed, in pursuance of the decree, an application was made on the part of the plaintiff to discharge the receiver, on the ground that the new trustees were willing to act; and the Master of the Rolls, Lord Langdale, made the order, although it was opposed by some of the defendants who were beneficially interested in the property as legatees ; but he made it conditionally, upon the trustees’ undertaking, without entering into recognizances, to account before the master half yearly, in the same way as the receiver.
Thomas v. Brigstocke, 3 Cond. Eng. Ch. R. 570, was not the case of an incumbrancer claiming the benefit of an order appointing a receiver, but of one claiming against it. A mortgagee who was no party to the suit, which was brought to establish the mortgagor’s will, petitioned for and obtained the discharge of the receiver, and afterwards moved to be paid the rents of the premises, which had accrued in the hands of the receiver, and had been paid into Court before his discharge, and after notice from the mortgagee to the tenants to pay the rents to him, which they had disregarded, in consequence of the appointment of the receiver: and his petition was rejected.
Brooks v. Greathed, 1 Jac. & Walk. 176, was not the case of a controversy pending in the suit at the time of the appointment of the receiver, and which enures, of course, to the successful party, but of an application *227 made by a senior incumbrancer, merely in that character, for leave to come in pro interesse suo, or to bring an ejectmentand so laying by a bill which he had himself filed, after the appointment of the receiver, to obtain. the benefit of his security, but which he had not commenced and prosecuted with such diligence as to render it available. And the Master of the Rolls, under the circumstances, refused the petitioner leave to come in pro interesse suo, and put him to his ejectment. After what has been already said, the points of difference between that case and this, are too obvious to require comment.
I have already suggested that such a case as this does not admit of the imputation of laches; and if it did, I can perceive no room for imputing it to Robert Beverley. He elected to continue the prosecution of his own suit, and has done so successfully, and his adversaries have gained no advantage by failing to prosecute theirs. He had a right to prosecute it without leave of the Court, and was not bound to abandon it, and ask leave to bring an ejectment, or bo examined pro interesse suo. He could not auswer in Weaver’s suit, because he had not been made a formal party by the plaintiff’s bill, which silently treated him as represented by his assignor and his trustee ; and he could not mature his own suit until he obtained Judge Scott’s answer, which was only a few days before the hearing of Weaver’s suit; and the answer of that defendant was material, in the admission of notice of Beverley’s incumbrance at the time that he took his own. The direction in the order of account in Weaver’s suit, that Beverley should submit to be examined before the commissioner, in relation to the consideration of the debt claimed by him, referred to Peter, not to Robert Beverley, and was unwarranted by the rules of equity practice, which authorize the examination of a defendant, upon substantive allegations in the bill, only where he has been placed in con *228 tempt for not filing an answer, by the personal service of process upon him.
There is nothing, I think, in the idea, that the appellant’s claim to the rents in the hands of the receiver, was adjudicated by the decree of this Court rendered upon the former appeal. That decree, as well as the decree which it reversed, was silent upon the subject of rents, and both were interlocutory. It is not the duty of this Court to render final decrees upon interlocutory appeals, or to respond therein to more than was decided in the Court below. If this were otherwise, it is obvious that the evil of appeals from interlocutory decrees would become intolerable.
If Beverley is entitled to an account of the rents in the hands of the receiver, no one else appears to "have a better right, or a right to participate with him. So far as he is concerned, English’s judgment must be regarded as satisfied. By the decree in Weaver’s suit, of May 1824, directing a sale of the property conveyed by the deed to Scott, not embraced in the deed to Mason, and the application of its proceeds, English was treated as a cestui que trust in the former, and placed on the same footing with other creditors whose debts were outstanding, and for which other persons were bound as sureties of Pickett, the grantor; all of whom were preferred to the general creditors, but postponed to Scott; and so placed in the second class: and the decree directed that if the proceeds of sale should be inadequate, after satisfying Scott, to pay the creditors of the second class, including English, (the amount of whose judgment was to be retained in the hands of Scott,) there should be a rebatement pro rata amongst the debts of that class, including English’s. Judge Scott’s report of sales, and application of the proceeds, shewed an inadequacy of the fund, after paying himself, to pay the creditors of the second class, and a consequent rebatement of the sum to be retained for English, from 3898 dollars 19 *229 cents principal and 472 dollars 85 cents interest, to only 596 dollars 40 cents; to which report the subsequent decree of October 1824 conformed. According to this disposition of the fund, English’s judgment was treated as constituting no lien upon the land, but as governed by the provisions of the deed to Scott; whereas in point of law it had priority over the deed to Scott, and was chargeable in the first instance upon the land thereby conveyed, except so much of it as was embraced in the prior deed to Mason, and only eventually upon the latter.
But by the decree of this Court in the present suits, upon the former appeal, the lands embraced in both deeds were charged ratably with English’s judgment, in proportion to the value of each, to be ascertained by the nett proceeds of the respective sales thereof, with a declaration that the land conveyed to Mason was not to be charged to the prejudice of the appellant, with any part of the proportion allotted to the other incumbrance. It follows that a sufficient sum having been appropriated from the sale of the land covered by the appellant’s incumbrance, to discharge the proportion of English’s judgment chargeable thereupon, so much of that judgment must be considered as satisfied; and if any loss has been occasioned in regard to the residue of that judgment, from the proceedings in Weaver’s suit, it is not to be visited upon the appellant, either in respect to the principal subject, or the rents which issued therefrom while in the hands of the receiver; though in respect to the former, the charge upon it for a part of English’s judgment, must stand as the law of these cases, having been adjudicated therein by this Court; notwithstanding the principle thereof has been overruled by its subsequent decisions in other causes.
As to the judgments of Letty Ball and Laird, they were treated by this Court as subordinate to the appellant’s incumbrance, and also to the deed to Scott, and *230 only so far available as coming within the provisions of the latter; and consequently can give no claim to the rents in the hands of the receiver, so long as any part of’ the appellant’s debt remains unsatisfied.
There seems but little probability that the rents in the hands of the receiver will he more than adequate to discharge the balance still due upon Beverley’s incumbrance : if, however, there should turn out to be a residue, that will not be disturbed by the relief to which Beverley is entitled.
I think, therefore, that the proper parties in interest are before the Court in the present suits. As to the formal plaintiff in Weaver’s suit, the result of the sales and priorities has reduced him to a mere shadow: the substantial plaintiffs having an interest in the present controversy seem to be all here.
If an account of the rents in the hands of the receiver was proper in behalf of the appellant, I can perceive no good reason for not directing it on his motion. The question is an incidental one arising out of the pleadings, proofs and proceedings in regard to the principal subject, and requires no further formalities for its safe and proper adjudication; and the account sought is merely to enforce the accountability to the Court of its own officer, arising out of what he has done under its own authority.
As regards the appellant’s pretension that Judge Scott has incurred any responsibility to him, by his proceedings in regard to English’s debt, it seems to me utterly without foundation ; and so I think, for reasons that will occur from what has been already said, and others that might be assigned, is the question of subrogation, raised on the part of some of the appellees, out of payments by Judge Scott of certain judgments, for which he was secured by his incumbrance from Pickett.
There is no error, I think, to the prejudice of the appellees, in the decree of the Circuit Court upon the sub *231 ject of costs. Of the rules that guide, rather than govern, the discretion of a Court of Equity in relation to costs, that which indicates the payment by each party of his own costs, where each has succeeded as to part of the matters of litigation between them, and both have asserted unfounded pretensions, seems applicable to the case of Brooke’s adm’r, &c. v. Pickett, &c. The rule which gives costs to the party substantially prevailing, applies to Beverley’s suit against Scott, &c., in which he has succeeded as to the oidy matter of controversy existing at the time of filing his bill; the lien of English’s judgment having been asserted afterwards by the suit of Brooke’s adm’r, &c. v. Pickett, &c., though it had been utterly disregarded in Weaver’s suit, and the propriety of Beverley’s amended bill, making Brooke, Steptoe Pickett, &c. parties, arising out of the suit of the latter, in which the matters thereof were mainly agitated, and for the purpose of connecting the two causes, in order that they might be brought to a hearing conjointly. The application of the rules designated is not repelled in these cases by another rule, that gives mortgagees or incumbrancers their costs out of the fund where the subject is directed to bo sold; which is qualified by still further rules, that give to the first mortgagee or incumbrancer the whole proceeds, where they are insufficient to satisfy his principal and interest, and moreover his costs against an adverse claimant. Nor does the circumstance that Judge Scott was a trustee constitute an exception in his favour, for trustees failing in a controversy are subjected to costs personally as well as other parties; and moreover he was also a cestui que trust deeply interested in and chiefly conducting the controversy. See 3 Daniel’s Ch. Prac. 1516, 20, 21, 25, 27, 29.
Upon the whole, after a careful re-examination of the subject, I am well satisfied with the decree rendered at the former hearing, and that having been set aside by *232 the order granting the rehearing, I think it ought now to be re-entered.
The other Judges concurred in Baldwin’s opinion.
The following is the decree of the Court :
The Court is of the opinion following, to wit: The suit of Weaver v. Pickett, &c. was brought to enforce the deed of trust executed by George B. Pickett to John Scott, for the benefit of creditors and sureties of the grantor, and involved the validity of the prior deed of trust executed by the same grantor to Thompson F. Mason, to secure a debt to Peter R. Beverley; which deed to Mason conveyed part of the real estate embraced in the deed to Scott. The order, therefore, in the case of Weaver v. Pickett, &c. appointing Scott a receiver of the rents and profits of the land conveyed to Scott, though made in general terms, and on the motion of the plaintiff in that suit, must be considered as having been made for the benefit of all the parties to the controversy, and as providing for the better security of those who should establish the better right to the subject out of which the rents and profits were to issue. And if in the suit of Weaver v. Pickett, &c. the controversy in regard to the validity of the deed to Mason had been determined and correctly decided, it would have followed that the rents and profits accruing under the order appointing a receiver, so far as issuing out of the land embraced by the deed to Mason, would have been properly applicable to the debt secured by that deed. But the Circuit Court, in the case of Weaver v. Pickett, &c. declined deciding upon the validity of the deed to Mason, and caused a sale to be made of so much of the land conveyed by the deed to Scott as was not embraced in the deed to Mason, the proceeds of which sale were applied to the purposes of the deed to Scott, as was also the first year’s rent of the whole land to accrue under the order ap *233 pointing the receiver. And no further proceedings have been had in that cause. But at the time when the order appointing the receiver was made, the suit of Beverley v. Scott, &c. was depending in the same Court; in which suit, the plaintiff Robert Beverley, claiming as assignee of Peter R. Beverley, asserted the validity of the deed to Mason, and sought to enforce it as paramount to the deed to Scott, and to obtain the surrender and sale of so much of the land conveyed by the deed to Mason as was embraced in the deed to Scott, and the application of the proceeds to the discharge of the plaintiff’s incumbrance. In the last mentioned cause, no appointment of a receiver was necessary, a receiver having already been appointed in the case of Weaver v. Pickett, &c., and if the Circuit Court had, by its interlocutory decree in the suits of Beverley v. Scott, &c. and Brooke and Pickett v. Beverley, &c., established the deed to Mason as paramount to that to Scott, it would have been competent for that Court, as an incident of the incumbrance so preferred, to have directed, by such decree, the application for its discharge pro tanto, of so much of the rents in the hands of its officer as had issued from the land conveyed by the deed to Mason; the proper parties in interest being before it, though the order for the appointment of the receiver had been made in another cause. But the Circuit Court, by its interlocutory decree in the suits of Beverley v. Scott, &c. and Brooke and Pickett v. Beverley, &c., postponed the incumbrance created by the deed to Mason, to that created by the deed to Scott, and directed a sale of the land embraced by the former deed, and the disposition of its proceeds, without noticing the rents in the hands of the receiver: And upon the appeal from that decree, this Court reversed the same, and postponed the incumbrance of the deed to Scott to the incumbrance of the deed to Mason, and both to the lien of English’s prior judgment, which it charged ratably on the lands conveyed *234 by those deeds, directing the land conveyed by the deed to Mason to be sold and the proceeds applied in conformity with the principles of its decision; but was silent Qn ^ subject 0f the rents in the hands of the receiver.
question, therefore, as to what disposition, if any, was to be made of those rents, was not decided by the interlocutory decree of the Circuit Court in the cases of Beverley v. Scott, &c. and Brooke and Pickett v. Beverley, &c., nor, upon the appeal therefrom, by the decree of this Court; and was open to the decision of the Circuit Court when those causes went back to that Court: And it was competent for the Circuit Court, as an incident of the relief which Beverley obtained in regard to the principal subject, to direct, without the formality of pleading, an account of the rents in the hands of the receiver which issued from the land covered by his incumbrance, and the appropriation thereof to so much of Beverley's debt as remains unsatisfied; with the exception, however, of so much of the rents as had been applied by the decree in the case of Weaver v. Pickett, &c. towards the discharge of the incumbrance of the deed to Scott, that decree having never been reversed nor appealed from, and being therefore conclusive so far as it disposed of the rents. The Circuit Court therefore erred in overruling the appellant’s motions for an account of said rents, and in failing by its decree to provide for the ascertainment and disposition thereof as above indicated: And it is therefore ordered and decreed, that said decree be reversed and annulled in that particular, with costs to the appellant. And the Court is further of opinion, that though there is no error in so •much of the said decree of the said Circuit Court as discharged the order for a survey of the land purchased by the appellant at the judicial sale thereof previously made, inasmuch as he had unreasonably delayed to have the survey made under said order; yet as these causes must be remanded and an account directed, it will not be im *235 proper to amend said decree by reinstating the order of survey: Wherefore it is ordered and decreed, that the same be so amended. And the Court being further of opinion, that there is no error in the residue of said decree, it is further ordered and decreed, that so much thereof be affirmed, and these causes are remanded to the said Circuit Court, to be there proceeded in according to the principles of the foregoing opinion and decree.